BIG RAPIDS NATIONAL BANK *v.* PETERS.[1]

1. PRINCIPAL AND SURETY — EXTENSION — RELEASE — RESERVATION OF REMEDY.

A surety is not released by an extension of time to the principal debtor, where the remedy against him is expressly reserved by the creditor.

2. SAME—EVIDENCE.

Evidence that the holder of a promissory note, on granting an extension of time to the principal debtor by accepting a new note, expressly refused to surrender the original note or to discharge the surety thereon, is sufficient to sustain a finding that the remedy against the surety was reserved.

3. BILLS AND NOTES—OWNERSHIP—QUESTION FOR JURY.

Where defendant denied plaintiff's ownership of a note sold by plaintiff before maturity, but redeemed, according to plaintiff's testimony, after it went to protest, it was not error to permit the jury to pass upon the question of ownership.

4. SAME—INTEREST—COMPROMISE VERDICT.

Defendant cannot complain of a verdict against him, as a compromise, because it does not include interest on the notes in suit.

Error to Manistee; McMahon, J. Submitted April 19, 1899. Decided July 5, 1899.

*Assumpsit* by the Big Rapids National Bank against Richard G. Peters upon promissory notes. From a judgment for plaintiff, defendant brings error. Affirmed.

*C. H. Gleason* (*Arthur Lowell* and *Fletcher & Wanty*, of counsel), for appellant.

*M. Brown* (*McAlvay & Grant*, of counsel), for appellee.

HOOKER, J. The plaintiff's action was brought to re-

[1] Rehearing denied November 7, 1899.

cover a balance alleged to be due upon eight promissory notes. The plaintiff obtained a verdict. Peters, the appellant, was a member of a copartnership styled Arthur Meigs & Co. These notes were signed by Carman, and were payable to Arthur Meigs & Co., and were by them indorsed and negotiated. Carman appears to have made the notes as an accommodation to Meigs & Co., who received $10,000 in money from the plaintiff upon them, or similar notes which these renewed. The earliest note sued upon was dated July 25, and the latest October 10, 1890. In October, 1890, Meigs & Co. became pecuniarily embarrassed, and sold their shingle mill to Carman, who promised to assume and pay the outstanding notes as a portion of the consideration. Of this the plaintiff was at once informed. The notes were not paid at maturity, and this action was brought against the maker, Carman, and indorsers, Meigs & Co. Service was not obtained upon Carman or Meigs. The defendant claimed that, through Carman's assumption of the debt, Meigs & Co. became his sureties, and that they were released by reason of an extension of time given to Carman by the plaintiff. To establish this defense, he proved that, after the maturity of these notes, the bank received other notes from Carman, signed by Carman, Bromley & Childs, from time to time, for a period of two or three years or more; discounts being regularly paid thereon. It appeared that the plaintiff was asked to receive other paper in lieu of the original notes, but refused, saying that it should not give them up until paid. There is testimony to the effect that, when the arrangement was made by which the subsequent notes were agreed to be taken, it was accompanied by a refusal to surrender the original paper or release the indorsers until the same was fully paid.

The court instructed the jury that, by the agreement for the purchase of the shingle mill, Carman became the principal debtor, and Meigs & Co. sureties; and he directed the jury to inquire whether, in the subsequent arrangement between Carman and the bank, it reserved the right

of action against the sureties. Counsel for the defendant allege error upon the last proposition, claiming that the court should have directed a verdict for the defendant, upon the ground that the undisputed testimony showed that he was discharged by an extension of time to the principal debtor.

It is not every extension of time that discharges a surety.

"If the creditor, at the time he releases the principal, reserves his remedies against the surety, such release amounts to a covenant not to sue only, and does not discharge the surety." 1 Brandt, Sur. § 147.

In *Oriental Financial Corporation* v. *Overend, Gurney & Co.*, 7 Ch. App. Cas. 142, Lord Hatherley said:

"It is competent to the creditors to reserve all their rights against the surety, in which case the surety is not discharged; and for this reason: That the contract made with the principal is then preserved, because the creditors have engaged with the principal not to sue him for a given time, but subject to the proviso that the creditors shall be at liberty to sue the surety, and so turn the surety upon the principal without any breach of the engagement with the principal."

The opinion of Mr. Justice Andrews in the case of *Calvo* v. *Davies*, 73 N. Y. 217 (29 Am. Rep. 130), is to the same effect. It was there said:

"The remedies against the surety are reserved. The agreement does not operate as an absolute, but only as a qualified and conditional, suspension of the right of action. The stipulation in that case is treated, in effect, as if it was made, in express terms, subject to the consent of the surety, and the surety is not thereby discharged."

See, also, *Hagey* v. *Hill*, 75 Pa. St. 108 (15 Am. Rep. 583); *Wyke* v. *Rogers*, 1 De Gex, M. & G. 408; *Sohier* v. *Loring*, 6 Cush. 537. Many other cases will be found cited in 24 Am. & Eng. Enc. Law, 830, note 2. The same doctrine is laid down in our own case of *Bailey* v. *Gould*, Walk. Ch. 482. If, therefore, the defendant stood in the attitude of surety, the court committed no

error in submitting the question of his discharge to the jury. We cannot agree with counsel that there was no testimony tending to show such reservation. The cashier testified that they would not carry the notes on the books of the bank, but that he told Carman that he might substitute other paper. He said further: "There was to be no extension. I told him, plainly, we would not release Mr. Peters under any circumstances, or him either." In this connection, we may add that we think the verdict was not so at variance with the weight of the evidence as to make a refusal to grant a new trial erroneous.

One other question demands notice, and requires a further statement of facts. It has been said that eight notes were sued upon, one of these being known as "Exhibit A." This was a renewal of a former note for $1,000, and was sold by the plaintiff, before maturity, to the Mecosta County Savings Bank. When Exhibit A became due, Carman paid Comstock, plaintiff's cashier, $500 upon it, and a Carman, Bromley & Childs note for $500. The defendant claims that the plaintiff was not the owner of Exhibit A, and therefore had no right of action upon it, and that the admission of testimony regarding it was erroneous. It is said that the jury must have found that the plaintiff owned this note when suit was commenced, although there was no testimony showing it. We find, on examining the record, that Comstock testified that the plaintiff redeemed this note, after it went to protest, by placing in the place of it $500 in cash and one of the Carman, Bromley & Childs notes. Again he said: "The plaintiff bank got the note by paying a Carman note and the money, after the protest. * * * I paid $500 in cash, and put in a Carman, Bromley & Childs note for $500, and took out this note." The judge left the question of ownership to the jury, and we think this was right.

But it is urged further that the record shows that the verdict was a compromise, and that it appears from the following circumstances: A witness testified that the amount due upon the eight notes, including principal and

interest, was $7,211.27, and, excluding Exhibit A, $6,333.39. The verdict was for $5,000, from which counsel conclude that the jury gave plaintiff the principal of the eight notes, without interest, and that the verdict must have been the result of a compromise, because there was no dispute about the amounts due upon the respective theories. If the jury intended to render a verdict for the principal of the eight notes, only the plaintiff can complain of the fact that interest was not included, as the defendant was not injured. We cannot presume that they did not so find. The inference of a compromise is not a necessary one. The point is ruled by *Benedict* v. *Provision Co.*, 115 Mich. 527.

The judgment is affirmed.

The other Justices concurred.